IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA DISABILITIES ADVOCACY PROGRAM, Plaintiff, | ) ) ) ) ) | CIVIL ACTION NO.: CV:13-519 |
| v. | ) ) ) | |
| SAFETYNET YOUTHCARE, INC. Defendant. | ) ) ) ) ) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATIVE RELIEF

### Preliminary Statement

1.   The Alabama Disabilities Advocacy Program ("ADAP") is Alabama's designated, federally funded, program authorized by Congress to protect and advocate for the civil rights of persons with disabilities in Alabama.

2.   ADAP seeks injunctive and declaratory relief against SafetyNet YouthCare, Inc., ("Defendant") for failing or refusing to provide ADAP access to monitor all programs of SafetyNet Academy, including its "Moderate Program," as authorized by law. SafetyNet Academy is operated by Defendant and is a child care facility licensed by the Alabama Department of Human Resources ("DHR"). ADAP files suit and seeks relief as described after making repeated efforts and failing to resolve this matter with Defendant in an agreed fashion.

3.  ADAP brings this action against SafetyNet Youth Care, Inc., pursuant to the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§ 10801 et seq., and its implementing regulations, 42 C.F.R. §§ 51.1. et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §§ 15041 et seq., and its implementing regulations, 45 C.F.R. §§ 1386.19 et seq.; the Protection and Advocacy of Individual Rights Program of 1993 ("PAIR Act"), 29 U.S.C. §§ 794e, et seq., and its implementing regulations, 34 C.F.R. § 381.1 et seq.

4.  ADAP seeks preliminary and permanent injunctions preventing Defendant and its agents from denying ADAP full, complete, and timely access to monitor all portions of its facilities accessible to and used by individuals with disabilities, as authorized by the PAIMI Act, PADD Act and PAIR Act.

## PARTIES

5.  ADAP is Alabama's designated federally funded program authorized by Congress to protect and advocate for the civil rights of persons with disabilities in Alabama. ADAP spends significant time and resources monitoring conditions and activities at licensed facilities like SafetyNet Academy, and advocating for the rights of children and youth with disabilities who reside in those facilities. ADAP files this complaint to address Defendant's failure to allow ADAP to monitor Defendant's facilities as authorized by law.

6.  SafetyNet Academy is licensed by DHR, pursuant to *Ala. Code* § 38-7-1, et seq. (1975), as a child care institution for males 10-18 years old. Defendant is registered with the Alabama

Secretary of State as a domestic non-profit corporation formed on November 12, 2002[1] and its registered office for service is located at 80 Mel Bailey Drive, Minter, Alabama, located in Dallas County, Alabama. Defendant's website indicates its corporate offices are located in Minter, Alabama.[2] According to its filings with the Alabama Secretary of State, SafetyNet Academy is a "facility for troubled and needy boys and adolescents."[3]

## JURISDICTION

7. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331 as to the federal statutory claims.

## VENUE

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Defendant resides and is registered to conduct business in Dallas County, Alabama.

## STATEMENT OF FACTS

### ADAP's Access Authority and SafetyNet's Status as a "Facility"

9. In 1975, the PADD Act established the Protection and Advocacy ("P&A") System to monitor and investigate incidents of abuse and neglect and to pursue legal, administrative, and other appropriate remedies to safeguard the rights of individuals with developmental disabilities. Congress extended the protection and advocacy mandate to cover

---

[1] Alabama Secretary of State, Government Records, http://arc-sos.state.al.us/cgi/corpname.mbr/input ( Enter under Entity Name: SafetyNet YouthCare, Inc.) (last visited October 3, 2013).

[2] SafetyNet Behavioral Healthcare, http:/safetynetbhc.com/locations.html (last visited October 3, 2013) "SafetyNet Academy in Minter, Alabama houses our corporate office and a moderate and intensive program for males. SafetyNet Academy can house 40 intensive students and 20 moderate students."

[3] Alabama Secretary of State, Government Records, http://arc-sos.state.al.us/cgi/corpname.mbr/input (Enter under Entity Name: SafetyNet YouthCare, Inc.) (last visited October 3, 2013)

individuals with mental illness with the enactment of the PAIMI Act in 1986. The scope of the P&A system was further expanded in 1993 when the PAIR Act was enacted.

10. To receive federal funding under the PAIMI, PADD and PAIR Acts, states must have in effect a P&A system. ADAP is designated as Alabama's P&A system.

11. Under the PAIMI Act, "any public or private residential setting that provides overnight care accompanied by treatment services" is a facility which a P&A is authorized to access and monitor:

> Facilities *include, but are not limited to* the following: General and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

42 C.F.R. § 51.2 (emphasis added).

12. Under the PADD Act, facilities include "any setting that provides care, treatment, services and habilitation… Facilities *include, but are not limited to* the following: Community living arrangements…, day programs, juvenile detention centers, hospitals, nursing homes, homeless shelters, jails and prisons." 45 C.F.R. § 1386.19 (emphasis added).

13. Under the PAIMI Act, "care" and "treatment" are defined as services:

> … provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only "as needed" or under a contractual agreement.

42 C.F.R. § 51.2.

14. The PAIMI and PADD Acts provide ADAP reasonable unaccompanied access to all residents of a facility at reasonable times to provide P&A service and contact information, rights information, monitor compliance with respect to the rights and safety of service recipients, and to view and photograph all areas of the facility that are used by

4

residents or are accessible to residents. 42 U.S.C. §10805(3); 42 C.F.R. § 51.42(c); 42 U.S.C. §15043(H); 45 C.F.R. §1386.22(g).

15. The PAIMI and PADD Acts provide ADAP unaccompanied access to residents of facilities, including the opportunity to meet and communicate privately with such individuals regularly, both formally and informally, by telephone, mail and in person. 42 C.F.R. § 51.42(d); 45 C.F.R. § 1386.22(h).

16. ADAP has authority to interact regularly with those individuals who are current or potential recipients of protection and advocacy services. ADAP may use any appropriate techniques and pursue administrative, legal or other appropriate remedies to protect and advocate on behalf of, e.g., individuals with mental illness, to address abuse, neglect or other violations of rights. 42 C.F.R. § 51.31(a)(d).[4]

17. The access provisions of the PAIMI, PADD, and PAIR statutes are interrelated and it is clear that Congress intended that they be applied in a consistent manner. The PAIR Act expressly incorporates by reference the authority regarding access to facilities and records as well as the other general authorities granted to P&As set forth in the PADD Act. *See* 29 U.S.C. § 794e (f). Moreover, the preamble to the PAIMI Act regulations states that it is the goal of the U.S. Department of Health and Human Services "to ensure that all facets of the P&A system administered by the Department [i.e., the PAIMI and PADD Acts] are subject to the same requirements." 62 Fed. Reg. 53549 (Oct. 15, 1997).

18. The PAIMI Act's implementing regulations state that a P&A entity such as ADAP has authority to access all residents of a facility where those with mental illness and emotional

---

[4] ADAP also possesses the authority to investigate allegations of abuse/neglect. *See* 42 U.S.C. §15043(2)(B); 42 U.S.C. § 10805(1)(A) . However, this Complaint addresses only enforcement of ADAP's authority to "monitor," not to "investigate."

5

disorders reside "despite the existence of any State or local laws or regulations which restrict informal access to minors and adults with legal guardians or conservators." 42 C.F.R. § 51.42(e).

19. SafetyNet Academy, including its Moderate Program, is a residential setting that provides overnight care accompanied by treatment services. SafetyNet Academy constitutes a "facility" under both the PAIMI and PADD Acts and their implementing regulations. 42 U.S.C. §10802(3);42 C.F.R. § 51.2.2; 42 C.F.R. § 1386.19; 42 U.S.C. §15043(a)(2)(H).

20. SafetyNet Academy is licensed to provide services to youth with emotional and behavioral disabilities in two programs at its Minter Campus: the Moderate Program and the Intensive Program. The Intensive Program is commonly known as a "psychiatric residential treatment facility for youth under the age of 21" ("PRTF"). Youths in either program may be diagnosed with such emotional and behavioral disabilities as Attention Deficit Hyperactivity Disorder, Depressive Disorder, Generalized Anxiety Disorder, Conduct Disorder, Bipolar Disorders or Obsessive Compulsive traits.[5]

**ADAP's Requests for Access and Defendant's Denials of Those Requests**

21. On numerous occasions in the past year ADAP communicated with SafetyNet Youth Care Inc.'s Chief Executive Officer, Mr. Lyn Wheatley, and Corporate Clincial Director, Ms. Sheila Hatfield, to describe ADAP's authority to monitor and to seek to gain access to all parts of the SafetyNet Academy facility that provide care and treatment of any persons with disabilities, regardless of what particular SafetyNet program may serve those persons.

---

[5] SafetyNet Behavioral Health Services, http://safetynetbhc.com/intensive-treatment-programs.html; http://safetynetbhc.com/moderate-treatment-program.html (Last Visited October 3, 2013)

22. ADAP's efforts to monitor and gain access to all parts of the SafetyNet Academy facility that provide care and treatment of any persons with disabilities, including its Moderate Program, have been denied.

23. In an October 2, 2012, letter to Mr. Wheatley and Ms. Hatfield, ADAP provided citations to its federal statutory authority to conduct monitoring activities in all parts of facilities providing care and treatment of any individuals with disabilities (Ex. 1). That request to monitor was denied.

24. On January 14, 2013, ADAP wrote to SafetyNet Academy Clincial Director, Ms. Valerie Schroeder, notifying her of ADAP's intent to conduct a monitoring visit to SafetyNet Academy in Minter, Alabama, on January 22, 2013, and informing her of ADAP' authority to monitor and gain access to SafetyNet's facilities. ADAP's January 14, 2013, letter explained in language similar to ADAP's October 2, 2012, correspondence ADAP's federal statutory authority to conduct monitoring activities, unaccompanied, in all parts of facilities like SafetyNet that provide care and treatment of any individuals with disabilities (Ex. 2).

25. On January 22, 2013, ADAP Senior Case Advocate Christy Johnson arrived at SafetyNet Acaemy and was told by Ms. Valerie Schroeder that she could meet with six boys who were outside playing Frisbee. After meeting with the residents playing Frisbee, Ms. Johnson asked Ms. Schroeder to allow her to meet with the residents assigned to the SafetyNet Moderate Program. Ms. Schroeder denied Ms. Johnson access to Defendant's Moderate program stating she was instructed not to allow ADAP to meet with the boys in the Moderate Program. Ms. Schroeder Ms. Schroeder stated ADAP was not allowed access to talk with Moderate Program residents because they do not receive psychiatric services. Ms. Johnson explained to Ms. Schroeder that the Protection and Advocacy Statutes allow ADAP broad access and allow ADAP to determine if a child meets the criteria to receive

P&A services; therefore, a facility like SafetyNet must allow P&A access to all residents. Ms. Schroeder stated she read and understood ADAP's letter prior to the January 22, 2013, visit, but she did not have authority to make decisions regarding ADAP's access. Ms. Schroeder referred Ms. Johnson to the DHR legal division to address ADAP's access to SafetyNet. Ms. Schroeder again denied Ms. Johnson access to Defendant's Moderate Program.

26. On January 23, 2013, ADAP wrote Mr. Wheatley requesting an opportunity to discuss ADAP's access authority to monitor so that future visits would occur without complication. (Ex. 3)

27. On April 29, 2013, ADAP wrote Ms. Schroeder to inform her of ADAP's intent to monitor Defendant's facility on Wednesday, May 1, 2013. (Ex.4)

28. On May 1, 2013, Ms. Johnson arrived at Defendant's facility and informed Ms. Hatfield she would like to meet with all SafetyNet Academy residents during her monitoring visit that day. Ms. Hatfield stated she was instructed to deny ADAP access to Moderate Program residents. On May 1, 2013, ADAP was again denied access to SafetyNet's Moderate Program.

29. On October 7, 2013, ADAP wrote SafetyNet Chief Executive Officer, Lyn Wheatley, stating that despite ADAP's numerous efforts to resolve its access to Defendant's Moderate Program over the past year, the Defendant continued to deny ADAP its right to monitor Defendant's facility. ADAP informed Mr. Wheatley it sought to resolve Defendant's failure to provide access within 14 days so as to avoid litigation. (Ex. 5)

30. On October 10, 2013, DHR wrote ADAP claiming ADAP has no legal basis to monitor Defendant's Moderate Program because: "Moderate facilities are not Intensive treatment programs and are not considered part of the Psychiatric Services for Individuals under the Age

of 21 ('Psych 21')." (Ex. 6)

31. On October 15, 2013, ADAP corresponded with Defendant's counsel to explain ADAP's authority under the PADD and PAIMI statutes, and their implementing regulations, to monitor facilities like Defendant's that provide care and treatment for individuals with disabilities. (Ex. 7)

32. On October 17, 2013, ADAP arranged to meet with counsel for Defendant and DHR at Defendant's facility on Monday October 21, 2013, to address ADAP's access authority and to seek to be granted access to monitor Defendant's Moderate Program by 5:00PM on October 21, 2013. (Ex. 8)

33 On October 21, 2013, ADAP met as arranged with counsel for Defendant and DHR, and with Defendant's Executive Director and Clinical Coordinator. ADAP explained again its authority to monitor Defendant's Moderate Program. ADAP again requested access to monitor Defendant's Moderate Program by 5:00PM on that date. Defendant, through its counsel and on the advice of DHR counsel, again denied ADAP access to monitor Defendant's Moderate Program.

34. Defendant has repeatedly refused to provide ADAP with access to all parts of Defendant's facility that provide care and treatment of any individuals with disabilities in violation of federal law.

35. Despite ADAP's repeated attempts to resolve the dispute described herein, Defendant has refused to allow ADAP to have access to Defendant's facilities in violation of the federal statutes and regulations cited herein.

## CAUSES OF ACTION

36. The actions of the Defendant, its agents, and employees, violate and continue to violate

the ADAP's rights to exercise full, reasonable, and unaccompanied access to all residents of Defendant's facility at reasonable times to provide P&A service and contact information, rights information, monitor compliance with respect to the rights and safety of service recipients, and to view and photograph all areas of the facility which are used by residents or are accessible to residents in violation of the PAIMI, PADD, and PAIR Acts and their implementing regulations. 42 C.F.R. § 51.42; 42 C.F.R. § 1386.22; 34 C.F.R. §§ 381.1 et seq.

### Injunctive Relief

37.     ADAP does not have an adequate remedy at law to redress Defendant's failure to provide ADAP with access to Defendant's facility in violation of the PAIMI, PADD, and PAIR Acts and their implementing regulations. 42 C.F.R. §§ 51.42; 42 C.F.R. §§ 1386.22; 34 C.F.R. §§ 381.1 et seq.

38.     ADAP will be irreparably harmed if the Defendant is permitted to continue denying ADAP with access to all residents of Defendant's facility and to portions of Defendant's facility that are used and accessed by residents of Defendant's facility. Defendant's past and continuing refusal to allow access causes irreparable harm to ADAP by preventing it from carrying out its statutory mandate to monitor facilities like the Defendant's for compliance with respect to the rights and safety of residents and to provide residents with information and training about how residents may obtain ADAP's services.

39.     The Defendant will not be harmed by the issuance of the requested injunctive and declaratory relief because the Defendant is required by law to grant ADAP access to monitor all areas of its facilities accessible to individuals for whom it provides treatment.

40.     Granting ADAP access to all residents of Defendant's facility and to all parts of

Defendant's facility where ADAP may lawfully gain access is in the public interest. ADAP must have full and unaccompanied access to residents of Defendant's facilities and to all areas that are used by residents and are accessible to residents so ADAP may fulfill its Congressional mandate to protect and advocate for the civil rights of persons, including children and youth, with disabilities. There is no lawful basis for Defendant's refusal to deny ADAP with access to the residents of any program, including the Moderate Program, at Defendant's facility.

### Declaratory Judgment

41.     An actual controversy exists between ADAP and the Defendant regarding ADAP's authority to gain access to Defendant's Moderate Program located at Defendant's facility known as the SafetyNet Academy in Minter, Alabama. The controversy described is within the jurisdiction of this Court, and ADAP seeks a declaration of its right to gain access to Defendant's facilities, including Defendant's Moderate Program, pursuant to the relevant federal statutes and regulations identified in this Complaint.

### PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays that this Court will grant the following relief:

(A)     Declare that ADAP shall have reasonable access under ADAP's federal access authority to all parts of Defendant's facility known as the SafetyNet Academy, including but not limited to the Moderate Program, which are used by and accessible to residents of Defendant's facility.

(B)     Declare that ADAP shall have reasonable access under ADAP's federal access authority to residents of Defendant's facility known as the SafetyNet Academy, including but not limited to the Moderate Program.

(C)     Declare that Defendant's denial of access by ADAP to Defendant's facilities, including but not limited to the SafetyNet Academy Moderate Program, and to residents of Defendant's facilities, is unlawful.

(D)     Issue a preliminary injunction enjoining the Defendant from further denying ADAP access to Defendant's facilities, including but not limited to the SafetyNet Academy Moderate Program, and to residents of Defendant's facilities including, but not limited to, the Moderate Program at SafetyNet Academy.

(E)     After a trial on the merits, issue a permanent injunction enjoining the Defendant from further denying ADAP access to Defendant's facilities, including but not limited to, the SafetyNet Academy Moderate Program, and to residents of Defendant's facilities including, but not limited to, the Moderate Program at SafetyNet Academy.

(F)     Award Plaintiff its costs and reasonable attorney fees; and

(G)     Grant Plaintiff such other relief as the Court deems necessary and just.

Respectfully Submitted,

/s/ David Slawkowski
David J. Slawkowski, ASB-0810D57S
Email: dslawkowski@adap.ua.edu
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, AL 35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909

**ATTORNEY FOR PLAINTIFF**