Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 1 of 34

# EXHIBIT 1

# CV-13-519

Case 2:13-cv-00519-CG-B    Document 1-1    Filed 10/25/13    Page 2 of 34



October 2, 2012

Mr. Lyn Wheatley
Ms. Sheila Hatfield
Safety Net Academy
80 Mel Bailey Drive
Minter, AL 36761

RE:  Alabama Disabilities Advocacy Program (ADAP) Access Authority
to Monitor and Investigate

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF
ALABAMA
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

Dear Mr. Wheatley and Ms. Hatfield:

During the last few years, ADAP has worked closely with the Alabama
Department of Human Resources and the Alabama Medicaid Agency
to fulfill the mandate of the Children's Health Act of 2000 to
investigate serious occurrences occurring in psychiatric residential
treatment facilities for youth under the age of 21 (PRTFs).

This mandate builds off of ADAP's primary mission as part of our
nation's protection and advocacy (P&A) system to protect the safety
and rights of persons with disabilities. Given that it has been a while
since our active engagement with PRTFs ramped up in earnest, we
believe it might be helpful to reacquaint PRTF staff - and introduce
new staff - to ADAP's federally-mandated monitoring and investigatory
role as the state's P&A agency.

ADAP has served as Alabama's P&A agency since the system's creation
through Congress' enactment of the Developmental Disabilities
Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6041 et seq. (DD
Act) and its subsequent expansion under both the Protection and
Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C.
10801 et seq. (PAIMI Act), and the Protection and Advocacy for
Individual Rights (PAIR) Program, Rehabilitation Act of 1973, 29 U.S.C.
794e.

Shocked by the inhumane conditions found at many of the nation's
hospitals, training schools and institutions for persons with mental
retardation, Congress enacted the DD Act in 1975 to protect the
human and civil rights of this vulnerable population.  Reauthorized in
2000, the DD Act mandates that each state establish a protection and
advocacy system authorized to:

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 3 of 34

2

(i) pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of (individuals with developmental disabilities) … and

(ii) provide information on and referral to programs and services addressing the needs of individuals with developmental disabilities;

(B) have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;

42 U.S.C. § 15043 (2000)

In 1986, the PAIMI Act was passed after congressional hearings and investigations substantiated numerous reports of abuse and neglect in state psychiatric facilities across the country. The PAIMI Act provides parallel protections for individuals with mental illness using the same mechanisms as the DD Act.

Under the Rehabilitation Act's PAIR program, P&As are authorized to use the same mechanisms as provided under the DD Act to serve persons with disabilities who are not eligible under either the DD Act or PAIMI Act. 29 U.S.C. § 794e.

Congress has continued to expand the mission of the P&A system beyond these three programs. Now, through a total of eight federally funded programs, P&As address a broad range of legal rights on behalf of persons with disabilities, whether those persons live in institutions or in community settings, including special education, employment preparation, healthcare access, architectural and programming accessibility, and voting.

Despite its expanded mission, the P&A system remains committed to ensuring the safety and well-being of persons with disabilities who live in institutional settings. In part, P&As carry out this work by conducting on-site facility monitoring and investigations, empowered by federal law providing the P&As with broad access rights to facilities and to their residents and staff members.

ADAP's monitoring work brings it to a variety of facilities that provide persons with disabilities services, support, care or treatment. These settings include, but are not limited to, public or private residential settings like residential and day schools, day treatment programs, general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

The goals of ADAP's facility monitoring are:

- To provide information on programs addressing the needs of individuals with disabilities to facility residents,

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 4 of 34

3

- To provide information about individual rights and ADAP's advocacy services to facility residents, and

- To monitor compliance regarding the rights and safety of residents.

As found in the DD Act, PAIMI Act and Rehabilitation Act of 1973, and interpreted through case law over the last thirty years, the P&A access authority for monitoring and investigation can be summarized as follows:

- Persons with disabilities may not be aware of their state's P&A or be able to contact the P&A on their own.  To ensure that persons with disabilities have access to the agency's protection and advocacy services, federal law provides P&As with the right to unaccompanied access to all residents of a facility at reasonable times (including, at a minimum, normal working hours and visiting hours) to provide information, training and referrals to facility residents.

- P&As have broad authority to conduct -- without probable cause to suspect abuse or neglect or other justification -- on-site monitoring of health and safety conditions in both institutional and community settings.

- Access to facility residents and staff to discuss issues relating to rights protections and treatment may not be restricted in most circumstances, and notice to a facility is generally not required prior to meeting with residents or staff.

- P&A staff have a right to have unaccompanied access to residents, which includes the opportunity to meet and communicate privately with them, both formally and informally, by telephone, mail and in person.  The right of informal access applies to all residents of a facility, including those who may eventually be found not to meet the P&A eligibility criteria. The P&A is the final arbiter of what individuals served by a facility are, or are not, P&A clients and a facility may not require, as a condition of granting access to records or facilities, that the P&A make a definitive showing that particular individuals have a disability.

- Permission of a parent or guardian of a resident is not necessary for P&A staff to meet informally with any resident.  However, the P&A staff must honor a resident's request to terminate an interview. A request to terminate an interview should not mean, however, that the P&A never again approaches the individual. Most advocates have worked with clients who will not talk with them one day, but welcome a respectful approach on the next.

- The P&A is allowed reasonable, unaccompanied access to facilities and community settings to investigate potential abuse or neglect.  This access includes the right to

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 5 of 34

4

speak with any service recipient or staff member who may have knowledge of the incident being investigated.

- The P&A has the right to access the records of individuals, including investigation reports of other agencies, with consent of the individual or his guardian.  Even without such consent, under certain circumstances, the P&A has a right to such records if it has probable cause to believe that an abuse or neglect incident has occurred or it has received a complaint.  The P&A is the final arbiter regarding the circumstances that amount to probable cause.  One circumstance that would allow a P&A to access records without consent involves individuals who do not have a legal guardian, conservator or other legal representative, or when the individual's guardian is the State or one of its political subdivisions.

- Records must be provided to the P&A within three days of a written request in most cases.  However, in the case of an investigation of a death or suspicion of an immediate threat to health or safety, records must be provided within 24 hours.  Under the DD Act (and the PAIR Program), access to records under these circumstances is mandated without the consent of any third party (e.g., a guardian).  Under the PAIMI Act, access must be afforded without such consent in the case of a death investigation; in the case where there is an immediate threat to health or safety and the individual has a guardian, access shall be provided over the guardian's objection (so long as his or her consent was sought).

- The P&A is required to protect the confidentiality of records provided to it to the same extent required by the facility/provider.

I hope this brief summary of ADAP's access authority has been helpful.  If you have any questions, please do not hesitate to contact our office.

With very best regards,

Nancy Anderson
Attorney

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 6 of 34

# EXHIBIT 2

# CV-13-519



January 14, 2013

Ms. Valerie Schroeder
Academy Clinical Director
SafetyNet Academy
80 Mel Bailey Drive
Minter, Alabama 36761

**Protection & Advocacy for Persons with Developmental Disabilities**

**Protection & Advocacy for Individuals with Mental Illness**

**Protection & Advocacy of Individual Rights**

**Protection & Advocacy for Assistive Technology**

**Protection & Advocacy for Individuals with Traumatic Brain Injury**

**Protection & Advocacy for Beneficiaries of Social Security**

**Protection & Advocacy for Voting Accessibility**

THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

RE: Alabama Disabilities Advocacy Program (ADAP) Access Authority to Monitor and Investigate

Dear Ms. Schroeder:

During the last few years, ADAP has worked closely with the Alabama Department of Human Resources and the Alabama Medicaid Agency to fulfill the mandate to the Children's Health Act of 2000 to investigate serious occurrences occurring in psychiatric residential treatment facilities for youth under the age of 21 (PRTFs).

This mandate builds off of ADAP's primary mission as part of our nation's protection and advocacy (P&A) system to protect the safety and rights of persons with disabilities. We believe it might be helpful to reacquaint PRTF staff – and introduce new staff – to ADAP's federally-mandated monitoring and investigatory role as the state's P&A agency.

ADAP has served as Alabama's P&A agency since the system's creation through Congress' enactment of the Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6041 et seq. (DD Act) and its subsequent expansion under both the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. 10801 et seq. (PAIMI Act), and the Protection and Advocacy for Individual Rights (PAIR) Program, Rehabilitation Act of 1973, 29 U.S.C. 794e.

Shocked by the inhumane conditions found at many of the nation's hospitals, training schools and institutions for persons with mental retardation, Congress enacted the DD Act in 1975 to protect the human and civil rights of this vulnerable population. Reauthorized in 2000, the DD Act mandates that each state establish a protection and advocacy system authorized to:

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 8 of 34

2

(i) pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of (individuals with developmental disabilities) ... and

(ii) provide information on and referral to programs and services addressing the needs of individuals with developmental disabilities;

(B) have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;

42 U.S.C. § 15043 (2000)

In 1986, the PAIMI Act was passed after congressional hearings and investigations substantiated numerous reports of abuse and neglect in state psychiatric facilities across the country. The PAIMI Act provides parallel protections for individuals with mental illness using the same mechanisms as the DD Act.

Under the Rehabilitation Act's PAIR program, P&As are authorized to use the same mechanisms as provided under the DD Act to serve persons with disabilities who are not eligible under either the DD Act or PAIMI Act. 29 U.S.C. § 794e.

Congress has continued to expand the mission of the P&A system beyond these three programs. Now, through a total of eight federally funded programs, P&As address a broad range of legal rights on behalf of persons with disabilities, whether those persons live in institutions or in community settings, including special education, employment preparation, healthcare access, architectural and programming accessibility, and voting.

Despite its expanded mission, the P&A system remains committed to ensuring the safety and well-being of persons with disabilities who live in institutional settings. In part, P&As carry out this work by conducting on-site facility monitoring and investigations, empowered by federal law providing the P&As with broad access rights to facilities and to their residents and staff members.

ADAP's monitoring work brings it to a variety of facilities that provide persons with disabilities services, support, care or treatment. These settings include, but are not limited to, public or private residential settings like residential and day schools, day treatment programs, general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

The goals of ADAP's facility monitoring are:

• To provide information on programs addressing the needs of individuals with disabilities to facility residents,

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 9 of 34

3

- To provide information about individual rights and ADAP's advocacy services to facility residents, and

- To monitor compliance regarding the rights and safety of residents.

As found in the DD Act, PAIMI Act and Rehabilitation Act of 1973, and interpreted through case law over the last thirty years, the P&A access authority for monitoring and investigation can be summarized as follows:

- Persons with disabilities may not be aware of their state's P&A or be able to contact the P&A on their own. To ensure that persons with disabilities have access to the agency's protection and advocacy services, federal law provides P&As with the right to unaccompanied access to all residents of a facility at reasonable times (including, at a minimum, normal working hours and visiting hours) to provide information, training and referrals to facility residents.

- P&As have broad authority to conduct -- without probable cause to suspect abuse or neglect or other justification -- on-site monitoring of health and safety conditions in both institutional and community settings.

- Access to facility residents and staff to discuss issues relating to rights protections and treatment may not be restricted in most circumstances, and notice to a facility is generally not required prior to meeting with residents or staff.

- P&A staff have a right to have unaccompanied access to residents, which includes the opportunity to meet and communicate privately with them, both formally and informally, by telephone, mail and in person. The right of informal access applies to all residents of a facility, including those who may eventually be found not to meet the P&A eligibility criteria. The P&A is the final arbiter of what individuals served by a facility are, or are not, P&A clients and a facility may not require, as a condition of granting access to records or facilities, that the P&A make a definitive showing that particular individuals have a disability.

- Permission of a parent or guardian of a resident is not necessary for P&A staff to meet informally with any resident. However, the P&A staff must honor a resident's request to terminate an interview. A request to terminate an interview should not mean, however, that the P&A never again approaches the individual. Most advocates have worked with clients who will not talk with them one day, but welcome a respectful approach on the next.

- The P&A is allowed reasonable, unaccompanied access to facilities and community settings to investigate potential abuse or neglect. This access includes the right to

4

speak with any service recipient or staff member who may have knowledge of the incident being investigated.

• The P&A has the right to access the records of individuals, including investigation reports of other agencies, with consent of the individual or his guardian. Even without such consent, under certain circumstances, the P&A has a right to such records if it has probable cause to believe that an abuse or neglect incident has occurred or it has received a complaint. The P&A is the final arbiter regarding the circumstances that amount to probable cause. One circumstance that would allow a P&A to access records without consent involves individuals who do not have a legal guardian, conservator or other legal representative, or when the individual's guardian is the State or one of its political subdivisions.

• Records must be provided to the P&A within three days of a written request in most cases. However, in the case of an investigation of a death or suspicion of an immediate threat to health or safety, records must be provided within 24 hours. Under the DD Act (and the PAIR Program), access to records under these circumstances is mandated without the consent of any third party (e.g., a guardian). Under the PAIMI Act, access must be afforded without such consent in the case of a death investigation; in the case where there is an immediate threat to health or safety and the individual has a guardian, access shall be provided over the guardian's objection (so long as his or her consent was sought).

• The P&A is required to protect the confidentiality of records provided to it to the same extent required by the facility/provider.

I hope this brief summary of ADAP's access authority has been helpful. I would like to schedule a monitoring visit to the Minter campus Tuesday, January 22. I will contact you by phone to discuss any questions you may have and to schedule a time for this visit.

With Best Regards,

Christy Johnson
Senior Case Advocate

cc: Lyn Wheatley, CEO
    Sheila Hatfield, Corporate Clinical Director

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 11 of 34

# EXHIBIT 3

# CV-13-519

**From:** Anderson, Nancy
**Sent:** Wednesday, January 23, 2013 10:30 AM
**To:** 'lyn@safetynetacademy.org'; 'sheilahatfield@safetynetacademy.org';
'valerie.schroeder@safetynetacademy.org'; 'sheila.hatfield@safetynetacademy.org'
**Subject:** ADAP access denied

Dear Mr. Wheatley, Ms. Hatfield, and Ms. Schroeder,

Please see attached letter (plus two referenced attachments) regarding ADAP's access authority
and the outcome of yesterday's monitoring visit.

Best Regards,

Nancy


Nancy Anderson
Attorney
Alabama Disabilities Advocacy Program (ADAP)
The University of Alabama
Box 870395
Tuscaloosa, AL 35487
205/348-6803 (desk)
205/348-4928 (main)
205/310-4784 (mobile)
205/348-3909 (fax)
nanderso@adap.ua.edu
Web: www.adap.net
Satisfaction Survey: http://www.adap.net/satisfaction.html

This email is intended only for the person to whom it is addressed. Any review or other use of this information by persons or
entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or
opinions expressed by the sender of this email are not necessarily those of the Alabama Disabilities Advocacy Program or The
University of Alabama.



ALABAMA DISABILITIES

**ADAP**

ADVOCACY PROGRAM

January 23, 2013

Mr. Lyn Wheatley
Executive Director
Safety Net Academy
80 Mel Bailey Drive
Minter, AL 36761

RE: Denial of Access at Safety Net/Minter

Dear Mr. Wheatley:

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF

**ALABAMA**

FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

ADAP Senior Case Advocate Christy Johnson went to Safety Net/Minter yesterday to conduct a monitoring visit and was denied access to speak to all facility residents. Clinical Director Valerie Schroeder told Ms. Johnson she was allowed to speak to Intensive Program residents only and not to Moderate Program residents.

As Ms. Johnson's main point of contact for this visit was going to be Ms. Schroeder and since Ms. Schroeder is relatively new to Safety Net, we provided her on January 14, 2013 with the same letter we sent to you in October 2012 outlining the scope of ADAP's access authority to monitor and investigate (see attachments). Among the key provisions of ADAP's access authority outlined in these letters is a description of ADAP's right to unaccompanied access to <u>all</u> residents of a facility. In addition, I spoke to Ms. Schroeder last week to confirm Ms. Johnson's visit and to answer any questions she had about ADAP's access authority in relation to the (then) approximately 22 youth on campus.

It appears that despite this outreach to you and your staff, there are lingering questions as to the scope of ADAP's access authority. I welcome the opportunity to clarify this matter so Ms. Johnson's subsequent monitoring visits occur without complication. I will contact you next Monday, January 28, to discuss this matter. In the meantime, as required under federal law, when ADAP's access to facilities, programs, residents or records is denied, a provider must promptly provide ADAP with a written statement of the reasons for the denial (*see* 45 C.F.R. Section 1386.22(i) and 42 C.F.R. Section 51.43). Please send this statement to me at the address below by Friday, January 25.

With very best regards,

*Nancy E. Anderson*

Nancy Anderson
Attorney

cc: Valerie Schroeder
    Sheila Hatfield



October 2, 2012

Mr. Lyn Wheatley
Ms. Sheila Hatfield
Safety Net Academy
80 Mel Bailey Drive
Minter, AL 36761

RE:  Alabama Disabilities Advocacy Program (ADAP) Access Authority
to Monitor and Investigate

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF
ALABAMA
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

Dear Mr. Wheatley and Ms. Hatfield:

During the last few years, ADAP has worked closely with the Alabama
Department of Human Resources and the Alabama Medicaid Agency
to fulfill the mandate of the Children's Health Act of 2000 to
investigate serious occurrences occurring in psychiatric residential
treatment facilities for youth under the age of 21 (PRTFs).

This mandate builds off of ADAP's primary mission as part of our
nation's protection and advocacy (P&A) system to protect the safety
and rights of persons with disabilities. Given that it has been a while
since our active engagement with PRTFs ramped up in earnest, we
believe it might be helpful to reacquaint PRTF staff - and introduce
new staff - to ADAP's federally-mandated monitoring and investigatory
role as the state's P&A agency.

ADAP has served as Alabama's P&A agency since the system's creation
through Congress' enactment of the Developmental Disabilities
Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6041 et seq. (DD
Act) and its subsequent expansion under both the Protection and
Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C.
10801 et seq. (PAIMI Act), and the Protection and Advocacy for
Individual Rights (PAIR) Program, Rehabilitation Act of 1973, 29 U.S.C.
794e.

Shocked by the inhumane conditions found at many of the nation's
hospitals, training schools and institutions for persons with mental
retardation, Congress enacted the DD Act in 1975 to protect the
human and civil rights of this vulnerable population.  Reauthorized in
2000, the DD Act mandates that each state establish a protection and
advocacy system authorized to:

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 15 of 34

2

(i) pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of (individuals with developmental disabilities) … and

(ii) provide information on and referral to programs and services addressing the needs of individuals with developmental disabilities;

(B) have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;

42 U.S.C. § 15043 (2000)

In 1986, the PAIMI Act was passed after congressional hearings and investigations substantiated numerous reports of abuse and neglect in state psychiatric facilities across the country. The PAIMI Act provides parallel protections for individuals with mental illness using the same mechanisms as the DD Act.

Under the Rehabilitation Act's PAIR program, P&As are authorized to use the same mechanisms as provided under the DD Act to serve persons with disabilities who are not eligible under either the DD Act or PAIMI Act. 29 U.S.C. § 794e.

Congress has continued to expand the mission of the P&A system beyond these three programs. Now, through a total of eight federally funded programs, P&As address a broad range of legal rights on behalf of persons with disabilities, whether those persons live in institutions or in community settings, including special education, employment preparation, healthcare access, architectural and programming accessibility, and voting.

Despite its expanded mission, the P&A system remains committed to ensuring the safety and well-being of persons with disabilities who live in institutional settings. In part, P&As carry out this work by conducting on-site facility monitoring and investigations, empowered by federal law providing the P&As with broad access rights to facilities and to their residents and staff members.

ADAP's monitoring work brings it to a variety of facilities that provide persons with disabilities services, support, care or treatment. These settings include, but are not limited to, public or private residential settings like residential and day schools, day treatment programs, general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

The goals of ADAP's facility monitoring are:

- To provide information on programs addressing the needs of individuals with disabilities to facility residents,

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 16 of 34

3

- To provide information about individual rights and ADAP's advocacy services to facility residents, and

- To monitor compliance regarding the rights and safety of residents.

As found in the DD Act, PAIMI Act and Rehabilitation Act of 1973, and interpreted through case law over the last thirty years, the P&A access authority for monitoring and investigation can be summarized as follows:

- Persons with disabilities may not be aware of their state's P&A or be able to contact the P&A on their own. To ensure that persons with disabilities have access to the agency's protection and advocacy services, federal law provides P&As with the right to unaccompanied access to all residents of a facility at reasonable times (including, at a minimum, normal working hours and visiting hours) to provide information, training and referrals to facility residents.

- P&As have broad authority to conduct -- without probable cause to suspect abuse or neglect or other justification -- on-site monitoring of health and safety conditions in both institutional and community settings.

- Access to facility residents and staff to discuss issues relating to rights protections and treatment may not be restricted in most circumstances, and notice to a facility is generally not required prior to meeting with residents or staff.

- P&A staff have a right to have unaccompanied access to residents, which includes the opportunity to meet and communicate privately with them, both formally and informally, by telephone, mail and in person. The right of informal access applies to all residents of a facility, including those who may eventually be found not to meet the P&A eligibility criteria. The P&A is the final arbiter of what individuals served by a facility are, or are not, P&A clients and a facility may not require, as a condition of granting access to records or facilities, that the P&A make a definitive showing that particular individuals have a disability.

- Permission of a parent or guardian of a resident is not necessary for P&A staff to meet informally with any resident. However, the P&A staff must honor a resident's request to terminate an interview. A request to terminate an interview should not mean, however, that the P&A never again approaches the individual. Most advocates have worked with clients who will not talk with them one day, but welcome a respectful approach on the next.

- The P&A is allowed reasonable, unaccompanied access to facilities and community settings to investigate potential abuse or neglect. This access includes the right to

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 17 of 34

4

speak with any service recipient or staff member who may have knowledge of the incident being investigated.

- The P&A has the right to access the records of individuals, including investigation reports of other agencies, with consent of the individual or his guardian. Even without such consent, under certain circumstances, the P&A has a right to such records if it has probable cause to believe that an abuse or neglect incident has occurred or it has received a complaint. The P&A is the final arbiter regarding the circumstances that amount to probable cause. One circumstance that would allow a P&A to access records without consent involves individuals who do not have a legal guardian, conservator or other legal representative, or when the individual's guardian is the State or one of its political subdivisions.

- Records must be provided to the P&A within three days of a written request in most cases. However, in the case of an investigation of a death or suspicion of an immediate threat to health or safety, records must be provided within 24 hours. Under the DD Act (and the PAIR Program), access to records under these circumstances is mandated without the consent of any third party (e.g., a guardian). Under the PAIMI Act, access must be afforded without such consent in the case of a death investigation; in the case where there is an immediate threat to health or safety and the individual has a guardian, access shall be provided over the guardian's objection (so long as his or her consent was sought).

- The P&A is required to protect the confidentiality of records provided to it to the same extent required by the facility/provider.

I hope this brief summary of ADAP's access authority has been helpful. If you have any questions, please do not hesitate to contact our office.

With very best regards,

*Nancy E. Anderson*

Nancy Anderson
Attorney

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 18 of 34



January 14, 2013

Ms. Valerie Schroeder
Academy Clinical Director
SafetyNet Academy
80 Mel Bailey Drive
Minter, Alabama 36761

**Protection & Advocacy for Persons with Developmental Disabilities**

**Protection & Advocacy for Individuals with Mental Illness**

**Protection & Advocacy of Individual Rights**

**Protection & Advocacy for Assistive Technology**

**Protection & Advocacy for Individuals with Traumatic Brain Injury**

**Protection & Advocacy for Beneficiaries of Social Security**

**Protection & Advocacy for Voting Accessibility**

RE: Alabama Disabilities Advocacy Program (ADAP) Access Authority to Monitor and Investigate

Dear Ms. Schroeder:

During the last few years, ADAP has worked closely with the Alabama Department of Human Resources and the Alabama Medicaid Agency to fulfill the mandate to the Children's Health Act of 2000 to investigate serious occurrences occurring in psychiatric residential treatment facilities for youth under the age of 21 (PRTFs).

This mandate builds off of ADAP's primary mission as part of our nation's protection and advocacy (P&A) system to protect the safety and rights of persons with disabilities. We believe it might be helpful to reacquaint PRTF staff – and introduce new staff – to ADAP's federally-mandated monitoring and investigatory role as the state's P&A agency.

ADAP has served as Alabama's P&A agency since the system's creation through Congress' enactment of the Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6041 et seq. (DD Act) and its subsequent expansion under both the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. 10801 et seq. (PAIMI Act), and the Protection and Advocacy for Individual Rights (PAIR) Program, Rehabilitation Act of 1973, 29 U.S.C. 794e.

Shocked by the inhumane conditions found at many of the nation's hospitals, training schools and institutions for persons with mental retardation, Congress enacted the DD Act in 1975 to protect the human and civil rights of this vulnerable population. Reauthorized in 2000, the DD Act mandates that each state establish a protection and advocacy system authorized to:

THE UNIVERSITY OF

**ALABAMA**

FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

2

(I) pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of (individuals with developmental disabilities) ... and

(II) provide information on and referral to programs and services addressing the needs of individuals with developmental disabilities;

(B) have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;

42 U.S.C. § 15043 (2000)

In 1986, the PAIMI Act was passed after congressional hearings and investigations substantiated numerous reports of abuse and neglect in state psychiatric facilities across the country. The PAIMI Act provides parallel protections for individuals with mental illness using the same mechanisms as the DD Act.

Under the Rehabilitation Act's PAIR program, P&As are authorized to use the same mechanisms as provided under the DD Act to serve persons with disabilities who are not eligible under either the DD Act or PAIMI Act. 29 U.S.C. § 794e.

Congress has continued to expand the mission of the P&A system beyond these three programs. Now, through a total of eight federally funded programs, P&As address a broad range of legal rights on behalf of persons with disabilities, whether those persons live in institutions or in community settings, including special education, employment preparation, healthcare access, architectural and programming accessibility, and voting.

Despite its expanded mission, the P&A system remains committed to ensuring the safety and well-being of persons with disabilities who live in institutional settings. In part, P&As carry out this work by conducting on-site facility monitoring and investigations, empowered by federal law providing the P&As with broad access rights to facilities and to their residents and staff members.

ADAP's monitoring work brings it to a variety of facilities that provide persons with disabilities services, support, care or treatment. These settings include, but are not limited to, public or private residential settings like residential and day schools, day treatment programs, general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

The goals of ADAP's facility monitoring are:

- To provide information on programs addressing the needs of individuals with disabilities to facility residents,

3

- To provide information about individual rights and ADAP's advocacy services to facility residents, and

- To monitor compliance regarding the rights and safety of residents.

As found in the DD Act, PAIMI Act and Rehabilitation Act of 1973, and interpreted through case law over the last thirty years, the P&A access authority for monitoring and investigation can be summarized as follows:

- Persons with disabilities may not be aware of their state's P&A or be able to contact the P&A on their own. To ensure that persons with disabilities have access to the agency's protection and advocacy services, federal law provides P&As with the right to unaccompanied access to all residents of a facility at reasonable times (including, at a minimum, normal working hours and visiting hours) to provide information, training and referrals to facility residents.

- P&As have broad authority to conduct — without probable cause to suspect abuse or neglect or other justification — on-site monitoring of health and safety conditions in both institutional and community settings.

- Access to facility residents and staff to discuss issues relating to rights protections and treatment may not be restricted in most circumstances, and notice to a facility is generally not required prior to meeting with residents or staff.

- P&A staff have a right to have unaccompanied access to residents, which includes the opportunity to meet and communicate privately with them, both formally and informally, by telephone, mail and in person. The right of informal access applies to all residents of a facility, including those who may eventually be found not to meet the P&A eligibility criteria. The P&A is the final arbiter of what individuals served by a facility are, or are not, P&A clients and a facility may not require, as a condition of granting access to records or facilities, that the P&A make a definitive showing that particular individuals have a disability.

- Permission of a parent or guardian of a resident is not necessary for P&A staff to meet informally with any resident. However, the P&A staff must honor a resident's request to terminate an interview. A request to terminate an interview should not mean, however, that the P&A never again approaches the individual. Most advocates have worked with clients who will not talk with them one day, but welcome a respectful approach on the next.

- The P&A is allowed reasonable, unaccompanied access to facilities and community settings to investigate potential abuse or neglect. This access includes the right to

4

speak with any service recipient or staff member who may have knowledge of the incident being investigated.

• The P&A has the right to access the records of individuals, including investigation reports of other agencies, with consent of the individual or his guardian. Even without such consent, under certain circumstances, the P&A has a right to such records if it has probable cause to believe that an abuse or neglect incident has occurred or it has received a complaint. The P&A is the final arbiter regarding the circumstances that amount to probable cause. One circumstance that would allow a P&A to access records without consent involves individuals who do not have a legal guardian, conservator or other legal representative, or when the individual's guardian is the State or one of its political subdivisions.

• Records must be provided to the P&A within three days of a written request in most cases. However, in the case of an investigation of a death or suspicion of an immediate threat to health or safety, records must be provided within 24 hours. Under the DD Act (and the PAIR Program), access to records under these circumstances is mandated without the consent of any third party (e.g., a guardian). Under the PAIMI Act, access must be afforded without such consent in the case of a death investigation; in the case where there is an immediate threat to health or safety and the individual has a guardian, access shall be provided over the guardian's objection (so long as his or her consent was sought).

• The P&A is required to protect the confidentiality of records provided to it to the same extent required by the facility/provider.

I hope this brief summary of ADAP's access authority has been helpful. I would like to schedule a monitoring visit to the Minter campus Tuesday, January 22. I will contact you by phone to discuss any questions you may have and to schedule a time for this visit.

With Best Regards,

Christy Johnson

Christy Johnson
Senior Case Advocate


cc: Lyn Wheatley, CEO
    Sheila Hatfield, Corporate Clinical Director

# EXHIBIT 4

# CV-13-519



**ALABAMA DISABILITIES**

# ADAP

**ADVOCACY PROGRAM**

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental
Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF

## ALABAMA

FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-
0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

Sent Via Email & U.S. Mail

April 29, 2013

Ms. Valerie Schroeder
Clinical Director
SafetyNet Academy
80 Mel Bailey Drive
Minter, Alabama 36761

RE: Monitoring & Investigation

Dear Ms. Schroeder:

ADAP plans to conduct a monitoring visit and an investigation on Wednesday, April 1 beginning at 10:00 a.m. at SafetyNet Academy.

During the monitoring, ADAP plans to meet with all residents at SafetyNet to inform of ADAP's services.  In addition, ADAP will conduct a record review and interviews with D████ M█████ and staff as necessary regarding a serious occurrence on 4/5/13.

Please contact me should you have questions.

With Best Regards,

Christy Johnson
Senior Case Advocate

cc: Sheila Hatfield
    Lyn Wheatley

# EXHIBIT 5

# CV-13-519

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 25 of 34



**ALABAMA DISABILITIES**

**ADVOCACY PROGRAM**

VIA EMAIL & US MAIL
October 7, 2013

Mr. Lyn Wheatley
Chief Executive Officer
SafetyNet Academy
80 Mel Bailey Drive
Minter, Alabama 36761

RE: Alabama Disabilities Advocacy Program (ADAP) Access Authority to Monitor and Investigate Safety Net Programs

Dear Mr. Wheatley:

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

Since October 2012, ADAP has been attempting to work with SafetyNet Inc. to inform and educate you and your staff on its federal access authority to monitor and investigate all areas of SafetyNet facilities used by and accessible to individuals with disabilities.  Specifically, ADAP has communicated with SafetyNet through numerous written correspondences and in person meetings explaining its right to access the Moderate Program of SafetyNet Academy located in Minter, Alabama. Each time ADAP has requested access to the Moderate Program, SafetyNet has refused ADAP access and has directed ADAP to State DHR Legal Counsel for justification for its denial.

At this time, SafetyNet has left ADAP with no meaningful option other than to take legal action to gain access to SafetyNet Academy's Moderate Program.  A copy of ADAP's complaint is enclosed requesting a Declaratory Judgment and Injunctive Relief against SafetyNet for its refusal to grant ADAP access to the Moderate Program and to award ADAP costs and attorney's fees per 28 U.S.C. § 2202,  42 U.S.C. § 1988,  and 45 C.F.R. §1386.25. ADAP intends to file this complaint with the U.S. District Court of the Southern District of Alabama within 14 days of the date of this letter.

We hope to hear from you soon so that this issue can be resolved quickly and avoid litigation.  You may contact me at (205) 348-7679 or at amixson@adap.ua.edu.

THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

Sincerely,

Andrea J. Mixson
Staff Attorney

Enc.

CC: Mr. Dave Slawkowski, Esq.

# EXHIBIT 6

# CV-13-519

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 27 of 34



**State of Alabama**

**Department of Human Resources**

S. Gordon Persons Building

50 Ripley Street

P. O. Box 304000

Montgomery, Alabama 36130-4000

(334) 242-1310

www.dhr.alabama.gov



ROBERT BENTLEY
*Governor*

Nancy T. Buckner
*Commissioner*

October 10, 2013

**VIA FASCIMILE & US MAIL**

Honorable Andrea Mixson
Alabama Disabilities Advocacy Program
University of Alabama
500 Martha Patham West
Tuscaloosa, Alabama 35487-0395

RE:   *Alabama Disabilities Advocacy Program (ADAP)*
      *Request for Access to SafetyNet Moderate Programs*

Dear Ms. Mixson:

The Alabama Department of Human Resources ("DHR") is in receipt of correspondence from you to Lynn Wheatley, Director of SafetyNet Youth Care, Inc. ("Safety Net") and the attached Complaint for Injunctive and Declarative Relief against SafetyNet. In the Complaint, you seek access to all the Moderate Programs of SafetyNet. Additionally, you indicate the intention to file the Complaint within fourteen (14) days of the letter dated October 7, 2013.

In an effort to resolve these issues DHR, as the licensing authority for SafetyNet is willing to implement a protocol for access to SafetyNet's moderate program. Neither DHR nor SafetyNet are admitting that any of the allegations in the Complaint are true. DHR and SafetyNet agree to access by ADAP to SafetyNet's moderate program based upon Eleventh Circuit standard for intensive programs set out in the case of *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492 (11th Cir. 1996). Therefore, access to the SafetyNet Moderate Program is conditioned upon:

a)   an incident or complaint made to ADAP as to the SafetyNet's moderate program; *or*
b)   there is probable cause to believe an incident has occurred at SafetyNet's moderate program.

Please note that in accordance with ALA. CODE § 26-14-3 (1975), reports of child abuse and neglect must be made to DHR immediately. Therefore, it is the expectation that ADAP, as a mandatory reporter under the statute; report to DHR any allegations of abuse or neglect.

DHR does not concede that ADAP has a sufficient legal basis for the relief sought should the complaint be filed. Moderate facilities are not Intensive treatment programs and are not

*Mixson Letter*
*ADAP*
*10/10/2013*

considered a part of the Psychiatric Services for Individuals under the Age of 21 ("Psych. 21"). As such, DHR is willing to implement this protocol in good faith to resolve this matter as to SafetyNet.

The basic premise of the protocol is stated above. However, we will submit a formal draft for your review and suggestions if you agree with the proposed protocol for SafetyNet. Please advise me within seven {7} days if you agree. DHR is interested in resolving this matter expeditiously.

I look forward to hearing from you soon about the proposed protocol.

Sincerely,

Sharon E. Ficquette
General Counsel
Phone: (334) 242-9330
Fax:    (334) 242-0689

Cc:    Lyn Wheatley
       Honorable Martha Thompson

2

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 29 of 34

# EXHIBIT 7

# CV-13-519

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 30 of 34



**ALABAMA DISABILITIES**

**ADAP**

**ADVOCACY PROGRAM**

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF
**ALABAMA**
F O U N D E D   1 8 3 1

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

**VIA EMAIL (mlt@hfsllp.com) & US MAIL**
October 15, 2013

Ms. Martha Thompson, Esq.
Huie, Fernambucq, & Stewart, LLP
2801 Highway 280 S. Suite 200
Birmingham, Alabama 35223-2484

RE: **Alabama Disabilities Advocacy Program (ADAP) Access Authority
to Monitor and Investigate Safety Net Programs**

Dear Martha:

I received correspondence dated October 10, 2013 from Alabama Department
of Human Resources (DHR) General Counsel Sharon Ficquette regarding
ADAP's access authority to monitor the Moderate Programs at SafetyNet
Youth Academy.   Given that your and Mr. Lyn Wheatley's names were on
the distribution list, I assume you are representing SafetyNet, Inc. in this
matter.

Ms. Ficquette's correspondence fails to acknowledge the scope of ADAP's
access authority to facilities such as the SafetyNet Moderate Program.
ADAP's access authority as Alabama's Protection and Advocacy agency
(P&A) agency is laid out in the Protection and Advocacy for Individuals with
Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§ 10801 et. seq., and
its implementing regulations at 42 C.F.R. §§ 51.1. et seq.; the Developmental
Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42
U.S.C. §§ 15001 et seq., and its implementing regulations found at 45 C.F.R.
§§ 1385 et seq.; and the Protection and Advocacy of Individual Rights
Program of 1993 ("PAIR Act"), 29 U.S.C. §§ 794e, et seq., and its
implementing regulations at 34 C.F.R. §§ 381.1 et seq.; and 42 U.S.C. § 1983.

First, ADAP's access authority is not limited to investigation activities, but
includes the following activities related to monitoring: interacting with all
residents of a facility, providing ADAP contact information to residents,
viewing and photographing facility areas used by and accessible to residents,
and physically observing all areas of a facility used by or accessible to
residents. *See* 42 U.S.C. §10805; 42 C.F.R. § 51.42(c); 42 U.S.C. §15043;
45 C.F.R. §1386.22(g).  A number of cases affirm a P&A's authority to
conduct monitoring: *Mississippi Protection and Advocacy System, Inc. v.
Cotten*, 1989 WL 224953 (S.D. Miss.); *Pennsylvania Protection and
Advocacy, Inc. v. Royer-Greaves School for the Blind*, 1999 WL 179797
(E.D. Pa.); *Robbins v. Budke*, 739 F.Supp. 1479 (D.N.M. 1990); *Kentucky
Protection and Advocacy Division v. Hall*, No. 3:01cv-538-H (W.D. Ky.,
2001) (unpublished); *Michigan Protection and Advocacy Service, Inc. v.
Miller*, 849 F. Supp. 1202 (W.D. Mi.1994).

Second, contrary to Ms. Ficquette's suggestion, ADAP's access authority to
monitor facilities is not limited to facilities classified as Intensive Treatment

Case 2:13-cv-00519-CG-B  Document 1-1  Filed 10/25/13  Page 31 of 34

Programs or Psychiatric Services for Individuals under the age of 21. The PAIMI regulations broadly define the term "facility" as follows:

<u>Any public or private presidential setting that provides overnight care accompanied by treatment services</u>. Facilities include but are not limited to the following: general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

42 C.F.R. § 51.2 (emphasis mine)

Likewise, the terms "care" and "treatment" are defined under the PAIMI regulations as those services:

> Provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only "as needed" or under a contractual arrangement.

42. C.F.R. 51.2

Thus, under the PAIMI Act, facilities include any public and private entities that serve-in part or whole- individuals with mental illness, and in which one or more individuals with mental illness reside or may reside, when those entities provide some care or treatment for person with mental illness, even if those services are only incidental to the primary function of the entity. SafetyNet's Moderate Programs clearly fit within the PAIMI regulation's broad definition of facilities and are accessible to ADAP for monitoring purposes as well as investigation purposes.

While Ms. Ficquette states in her correspondence that DHR and SafetyNet are willing to implement a protocol for ADAP's access to SafetyNet's Moderate Program, ADAP will not enter into a protocol with SafetyNet that will place limits on the monitoring and investigative activities it is authorized under federal law to conduct.

ADAP has successfully defended our access rights across a variety of settings and involving a variety of defendants which also included the recovery of attorney's fees. If ADAP and SafetyNet cannot resolve this matter this week, ADAP intends to file its complaint against SafetyNet on October 21, 2013. We hope to hear from you soon so this issue can be resolved. You may contact me at (205) 348-7679 or at amixson@adap.ua.edu.

Sincerely,

Andrea J. Mixson
Staff Attorney


CC: Mr. Lyn Wheatley
    Ms. Sharon Ficquette, Esq.
    Mr. Dave Slawkowski, Esq.

Letter to M. Thompson
Pg. 2
10.15.2013

**Mixson, Andrea**

| | |
|---|---|
| **From:** | Hackney, Christa |
| **Sent:** | Wednesday, October 16, 2013 12:34 PM |
| **To:** | mlt@hfsilp.com |
| **Cc:** | sharon.ficquette@dhr.alabama.gov; lyn@safetynetacademy.org |
| **Subject:** | Letter to MH |
| **Attachments:** | Ltr to M Thompson (ADAP) 10 15 13.pdf |

Please see attached.

Christa Hackney, LCSW
Senior Case Advocate
Alabama Disabilities Advocacy Program (ADAP)
The University of Alabama
Box 870395
Tuscaloosa, AL 35487-0395
205.348.3471 (direct)
205.348.4928 (main)
800.826.1675 (toll free)
205.348.3909 (fax)
chackney@adap.ua.edu
Web: www.adap.net
Satisfaction survey: http://www.adap.net/satisfaction.html

This email is intended only for the person to whom it is addressed. Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the Alabama Disabilities Advocacy Program or The University of Alabama.

Case 2:13-cv-00519-CG-B   Document 1-1   Filed 10/25/13   Page 33 of 34

# EXHIBIT 8

# CV-13-519

**Mixson, Andrea**

| | |
|---|---|
| **From:** | Mixson, Andrea |
| **Sent:** | Thursday, October 17, 2013 2:40 PM |
| **To:** | Martha Thompson (MThompson@huielaw.com) |
| **Cc:** | sharon.ficquette@dhr.alabama.gov; 'Tucker, James (jtucker@adap.ua.edu)'; Slawkowski, Dave; lyn@safetynetacademy.org |
| **Subject:** | Safety Net Access |
| | |
| **Importance:** | High |

Martha:

Thank you for your call this afternoon.  ADAP will agree to meet with SafetyNet counsel, SafetyNet staff,  DHR counsel, or any other representatives you and your client should delegate in your absence, no later than Monday, October 21, 2013 at the SafetyNet Minter Campus to:  1) discuss our federal access authority with you and 2) to be accorded access to monitor the  SafetyNet Academy Moderate Program by 5:00PM on 10.21.2013.

We hope to hear from you soon.

Best Regards,
Andrea

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP) University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL  35487-0395
205-348-7679
205-348-3909 (fax)
1-800-826-1675 (toll-free)
This email is intended only for the person to whom it is addressed.  Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited.  The views or opinions expressed by the sender of this email are not necessarily those of the institution.

**Tracking:**