# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA DISABILITIES ADVOCACY PROGRAM, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | CV 2013-519 |
| SAFETYNET YOUTHCARE, INC., | ) ) | |
| Defendant. | ) | |
| SAFETYNET YOUTHCARE, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | CV 2013-519 |
| ALABAMA DEPARTMENT OF HUMAN RESOURCE | ) ) ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OF BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant/Counter-Plaintiff, SafetyNet Youthcare, Inc. ("SafetyNet"), and in support of its contemporaneously filed Motion for Summary Judgment, states as follows:

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. SafetyNet is a residential facility that provides treatment for males ages 10-18 and is licensed by the Alabama Department of Human Resources ("DHR") pursuant to Ala. Code § 38-7-1, *et. seq.* (1992). (*See* Affidavit of Lyn Wheatley, attached hereto as **Exhibit A**).

1

2.      The Alabama Disabilities Advocacy Program ("ADAP") is an Alabama organization that purports to protect and advocate for the rights of persons with disabilities in Alabama. (*See* Complaint for Injunctive and Declarative Relief, ¶ 1).

3.      The Alabama Department of Human Resources ("DHR") was created pursuant to Ala. Code § 38-2-1, *et seq.*, (1992) and is responsible for allocating federal and state funds to various divisions and programs within Alabama, to be used for public assistance and administration of services based on the relative welfare needs in the several counties. Ala. Code § 38-2-5 (1992).

4.      DHR is the licensing authority for SafetyNet, and therefore, SafetyNet has a duty to comply with DHR's policies and directives. Failure to adhere to DHR's policies, requirements and directives could result in the revocation of SafetyNet's license. *See* Ala. Code § 660-5-26-.10(7), *et seq.* (*See* Exhibit A, ¶ 5).

5.      Pursuant to its contract with DHR, SafetyNet provides two (2) distinct programs of residential treatment: a Moderate Program and an Intensive Program[1]. (Exhibit A, ¶ 4).

6.      In October 2, 2012, ADAP attorney Nancy Anderson sent a letter to SafetyNet, outlining ADAP's legislative authority and discussing ADAP's allegedly unfettered authority to access and monitor <u>all</u> of SafetyNet's residents, including residents in the Moderate Program. (October 2, 2012 letter from ADAP to SafetyNet; attached hereto as **Exhibit B**).

---

[1] The distinction between the Moderate Program and the Intensive Program has absolutely no bearing on SafetyNet's Motion for Summary Judgment presently before the Court.

7. Upon receiving the October 2, 2012 letter from ADAP, SafetyNet's corporate clinical director, Shelia Hatfield, called Susan Ward at DHR in order to confirm that it was still DHR's position that ADAP did not have authority to access residents in the Moderate Program. (Deposition of Sheila Hatfield, pg. 15; excerpts attached hereto as **Exhibit C**).

8. After her initial phone call to DHR, Ms. Hatfield received a phone call from DHR's general counsel, Sharon Ficquette, instructing SafetyNet to refer all ADAP representatives to Ms. Ficquette before granting ADAP access to residents in the Moderate Program. (Hatfield Depo., pg. 15-16; Exhibit A, ¶ ¶ 6-8).

9. Pursuant to DHR's explicit instructions, whenever an ADAP representative would show up at SafetyNet and request access to a resident in the Moderate Program, ADAP was told that it would have to call DHR before it would be given access to residents in the Moderate Program. (Hatfield Depo., pg. 18, pg. 20; Exhibit A, ¶ ¶ 6-8).

10. On October 7, 2013, ADAP attorney Andrea Mixon wrote SafetyNet's director, Lyn Wheatley, once again demanding that ADAP be given access to residents in the Moderate Program, and threatening litigation if SafetyNet failed to comply with ADAP's demand within fourteen (14) days. (October 7, 2013 letter from Andrea Mixon to Lyn Wheatley; attached hereto as **Exhibit D**).

11. SafetyNet, through its counsel, forwarded Ms. Mixon's October 7th letter, as well as ADAP's proposed Complaint for Injunctive and Declarative Relief, to the attention of DHR's general counsel, Sharon Ficquette. On October 10, 2013, Ms.

3

Ficquette responded to Ms. Mixon's October 7th demand letter and ADAP's proposed Complaint against SafetyNet. (October 10, 2013 letter from Sharon Ficquette to Andrea Mixon; attached hereto as **Exhibit E**).

12. Ms. Ficquette's October 10th letter to ADAP states, in part, that "[i]n an effort to resolve these issues **DHR, as the licensing authority for SafetyNet[,] is willing to implement a protocol for access to SafetyNet's moderate program**." (Exhibit E) (emphasis added).

13. ADAP rejected DHR's proposal set out in Ms. Ficquette's October 10th letter and on October 25, 2013, ADAP filed its Complaint for Injunctive and Declarative Relief in the United States District Court for the Southern District of Alabama, Northern Division. (*See* Complaint, Doc. 1). SafetyNet was the only Defendant named in ADAP's Complaint.

14. In its Complaint, ADAP seeks injunctive and declarative relief based on SafetyNet's alleged refusal to grant ADAP complete access to residents in the Moderate Program. (Complaint, ¶ 2, Doc. 1).

15. As outlined in ADAP's Complaint, **SafetyNet has repeatedly referred ADAP to DHR's legal department** to address ADAP's request for access to SafetyNet residents in the Moderate Program. (Complaint, ¶ 25; *see also* Ex. A, ¶ ¶ 7-9).

16. On December 2, 2013, SafetyNet filed a Third-Party Claim against DHR for indemnification and contribution, pursuant to Rules 14(a) and 22 of the Federal Rules of Civil Procedure. (*See* Third-Party Complaint, Doc. 8).

17. In its Third-Party Complaint, SafetyNet re-asserted the undisputed fact that DHR, not SafetyNet, made the decision to deny ADAP access to residents in SafetyNet's Moderate Program. Further, SafetyNet was simply following DHR's explicit instructions when it referred ADAP to DHR's legal department and denied ADAP access to residents in the Moderate Program. (Exhibit A, ¶ ¶ 7-9). Accordingly, SafetyNet asserts that if the Court determines that SafetyNet has violated ADAP's rights, which Safety vehemently denies, then SafetyNet is entitled to indemnification and contribution from DHR.

18. SafetyNet does not, nor has it ever, objected to granting ADAP access to residents in SafetyNet's Moderate Program. SafetyNet has and continues to comply with the explicit instructions of its licensing agency, DHR. (Exhibit, A, ¶ ¶ 7-9).

19. ADAP has not and cannot provide any Alabama precedent or statutory authority that would legally compel SafetyNet to disregard instructions from DHR, the governmental agency which licenses SafetyNet.

20. ADAP's expert in this case, Timothy Stone, testified that he has absolutely no criticism of the treatment or services provided by SafetyNet. (Deposition of Dr. Timothy Stone, pg. 181; excerpts attached hereto as **Exhibit F**). Likewise, Dr. Stone did not offer any testimony that would even suggest that SafetyNet had a duty, legal or otherwise, to disregard DHR's explicit instructions and grant ADAP's request for access to monitor residents in the Moderate Program. Further, ADAP's counsel stipulated that Dr. Stone was not being offered to interpret any contracts, nor would Dr. Stone offer any legal opinions whatsoever. (Stone Depo., pg. 104-105).

5

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coates & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991).

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F. 2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F. 2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## ARGUMENT

**DHR is the licensing authority for SafetyNet and SafetyNet is under a statutory and contractual obligation to comply with DHR's directives.**

DHR is the licensing authority for SafetyNet and DHR has explicitly instructed SafetyNet not to grant ADAP access to residents in SafetyNet's Moderate Program. (Exhibit A, ¶ ¶ 8-9). ADAP, on-the-other-hand, asserts that it has the legal authority to be granted access to all residents at SafetyNet's facilities, and by denying ADAP access to Moderate residents, SafetyNet is violating ADAP's rights. SafetyNet is in classic "Catch-22" predicament. If SafetyNet grants ADAP request to monitor residents in the Moderate Program, against DHR's explicit instructions, SafetyNet risks DHR revoking SafetyNet's license and/or refusing to renew SafetyNet's contract. (Exhibit A, ¶ 5). If SafetyNet complies with DHR's instructions, and denies ADAP's request to monitor residents in the Moderate Program, SafetyNet opens itself up to ADAP litigation and incurring substantial attorneys' fees.

Alabama law gives Alabama DHR the authority to license residential facilities, as well as to develop and set out minimum standards for the licensing and the approval of said facilities. Ala. Code § 38-7-1, § 38-7-4, § 38-7-7 (1975). In conjunction with DHR's authority to license facilities, DHR likewise has the authority to revoke a facility's license. For example, DHR may revoke a facility's license if DHR believes that the facility has "[v]iolate[d] the provisions of the license or permit issued." Ala. Code § 38-7-8(2); *See also* Exhibit A, ¶ 5.

DHR and SafetyNet's Moderate Core Services Contract states, in part, that:

> **Both parties agree to *adhere to DHR policies and requirements*, which have been provided to Contractor [SafetyNet] by DHR.** Such policies and requirements include but are not necessarily limited to policies relating phone, mail, visitation, behavior management, seclusion, restraint, etc. Such policies and requirements are subject to change, and shall be implemented upon notice to the Contractor [SafetyNet] by DHR.

(Addendum B 1 to Moderate Core Services Contract, ¶ IV; attached hereto as **Exhibit G**)(emphasis in bold in original)(emphasis in italics added).

In the present case, DHR explicitly instructed SafetyNet not to grant ADAP access to residents in the Moderate Program and instructed SafetyNet to refer ADAP representatives to DHR's legal department. (*See, e.g.,* Hatfield Depo., pg. 16-18; 20; (Exhibit A, ¶ ¶ 6-9).). Based upon SafetyNet's communications with DHR and DHR's counsel, SafetyNet has at all times acted under the reasonable and good faith belief that DHR was acting within its authority when DHR instructed SafetyNet to deny ADAP access to residents in the Moderate Program. (*See* Exhibit A). Additionally, SafetyNet's service contract with DHR mandates that SafetyNet adhere to all DHR policies and directives, or risk DHR revoking SafetyNet's license and/or refusing to renew SafetyNet's service contract. (Exhibit G; Exhibit A). Under basic principles of equity and fairness, SafetyNet cannot be held responsible for any alleged violation of ADAP's rights, where SafetyNet has simply followed the instructions of its governmental and licensing authority.

ADAP has provided absolutely no statutory authority or case law that would require (or permit) SafetyNet to disregard explicit instructions from SafetyNet's licensing governmental agency- DHR. Likewise, ADAP cannot cite to any legal

authority that would support a legal cause of action against SafetyNet, based solely on SafetyNet's compliance with its contractual obligations, as well as DHR's explicit instructions. Without any legal basis or support, ADAP's claims against SafetyNet fail as a matter of law, and SafetyNet's Motion for Final Summary Judgment is due to be granted.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant, SafetyNet Youthcare, Inc., respectfully requests that this Honorable Court grant its Motion for Summary Judgment on all Plaintiff's claims against it with prejudice, and prays for such other, further, and different relief to which it may be entitled, the premises considered. Costs in this matter should be taxed against Plaintiff.

Respectfully submitted this 19th day of September, 2014.

/s/ *Martha Leach Thompson*
Martha Leach Thompson
Stewart W. McCloud
Attorneys for Defendant,
SafetyNet Youthcare, Inc.

**OF COUNSEL:**
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
(205) 251-1193

## CERTIFICATE OF SERVICE

I hereby certify that on September 19th, 2014, I have electronically filed the foregoing pleading with the Clerk of the Court which will send notification of the filing to:

Sharon E. Ficquette
Luther Strange
Felicia Brooks
Alabama Department of Human Resources
P O Box 304000
50 Ripley Street, Suite 2122
Montgomery, AL 36130-4000

David Slawkowski
Andrea Mixson
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, AL 35487

/s/ *Martha Leach Thompson*
Of Counsel