EXHIBIT "B"



**ALABAMA DISABILITIES ADAP ADVOCACY PROGRAM**

October 2, 2012

Mr. Lyn Wheatley
Ms. Sheila Hatfield
Safety Net Academy
80 Mel Bailey Drive
Minter, AL 36761

RE: Alabama Disabilities Advocacy Program (ADAP) Access Authority to Monitor and Investigate

Dear Mr. Wheatley and Ms. Hatfield:

Protection & Advocacy for Persons with Developmental Disabilities

Protection & Advocacy for Individuals with Mental Illness

Protection & Advocacy of Individual Rights

Protection & Advocacy for Assistive Technology

Protection & Advocacy for Individuals with Traumatic Brain Injury

Protection & Advocacy for Beneficiaries of Social Security

Protection & Advocacy for Voting Accessibility

THE UNIVERSITY OF
ALABAMA
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

During the last few years, ADAP has worked closely with the Alabama Department of Human Resources and the Alabama Medicaid Agency to fulfill the mandate of the Children's Health Act of 2000 to investigate serious occurrences occurring in psychiatric residential treatment facilities for youth under the age of 21 (PRTFs).

This mandate builds off of ADAP's primary mission as part of our nation's protection and advocacy (P&A) system to protect the safety and rights of persons with disabilities. Given that it has been a while since our active engagement with PRTFs ramped up in earnest, we believe it might be helpful to reacquaint PRTF staff - and introduce new staff - to ADAP's federally-mandated monitoring and investigatory role as the state's P&A agency.

ADAP has served as Alabama's P&A agency since the system's creation through Congress' enactment of the Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6041 et seq. (DD Act) and its subsequent expansion under both the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. 10801 et seq. (PAIMI Act), and the Protection and Advocacy for Individual Rights (PAIR) Program, Rehabilitation Act of 1973, 29 U.S.C. 794e.

Shocked by the inhumane conditions found at many of the nation's hospitals, training schools and institutions for persons with mental retardation, Congress enacted the DD Act in 1975 to protect the human and civil rights of this vulnerable population. Reauthorized in 2000, the DD Act mandates that each state establish a protection and advocacy system authorized to:

> (i) pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of (individuals with developmental disabilities) ... and
>
> (ii) provide information on and referral to programs and services addressing the needs of individuals with developmental disabilities;
>
> (B) have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;

42 U.S.C. § 15043 (2000)

In 1986, the PAIMI Act was passed after congressional hearings and investigations substantiated numerous reports of abuse and neglect in state psychiatric facilities across the country. The PAIMI Act provides parallel protections for individuals with mental illness using the same mechanisms as the DD Act.

Under the Rehabilitation Act's PAIR program, P&As are authorized to use the same mechanisms as provided under the DD Act to serve persons with disabilities who are not eligible under either the DD Act or PAIMI Act. 29 U.S.C. § 794e.

Congress has continued to expand the mission of the P&A system beyond these three programs. Now, through a total of eight federally funded programs, P&As address a broad range of legal rights on behalf of persons with disabilities, whether those persons live in institutions or in community settings, including special education, employment preparation, healthcare access, architectural and programming accessibility, and voting.

Despite its expanded mission, the P&A system remains committed to ensuring the safety and well-being of persons with disabilities who live in institutional settings. In part, P&As carry out this work by conducting on-site facility monitoring and investigations, empowered by federal law providing the P&As with broad access rights to facilities and to their residents and staff members.

ADAP's monitoring work brings it to a variety of facilities that provide persons with disabilities services, support, care or treatment. These settings include, but are not limited to, public or private residential settings like residential and day schools, day treatment programs, general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

The goals of ADAP's facility monitoring are:

- To provide information on programs addressing the needs of individuals with disabilities to facility residents,

- To provide information about individual rights and ADAP's advocacy services to facility residents, and

- To monitor compliance regarding the rights and safety of residents.

As found in the DD Act, PAIMI Act and Rehabilitation Act of 1973, and interpreted through case law over the last thirty years, the P&A access authority for monitoring and investigation can be summarized as follows:

- Persons with disabilities may not be aware of their state's P&A or be able to contact the P&A on their own. To ensure that persons with disabilities have access to the agency's protection and advocacy services, federal law provides P&As with the right to unaccompanied access to all residents of a facility at reasonable times (including, at a minimum, normal working hours and visiting hours) to provide information, training and referrals to facility residents.

- P&As have broad authority to conduct -- without probable cause to suspect abuse or neglect or other justification -- on-site monitoring of health and safety conditions in both institutional and community settings.

- Access to facility residents and staff to discuss issues relating to rights protections and treatment may not be restricted in most circumstances, and notice to a facility is generally not required prior to meeting with residents or staff.

- P&A staff have a right to have unaccompanied access to residents, which includes the opportunity to meet and communicate privately with them, both formally and informally, by telephone, mail and in person. The right of informal access applies to all residents of a facility, including those who may eventually be found not to meet the P&A eligibility criteria. The P&A is the final arbiter of what individuals served by a facility are, or are not, P&A clients and a facility may not require, as a condition of granting access to records or facilities, that the P&A make a definitive showing that particular individuals have a disability.

- Permission of a parent or guardian of a resident is not necessary for P&A staff to meet informally with any resident. However, the P&A staff must honor a resident's request to terminate an interview. A request to terminate an interview should not mean, however, that the P&A never again approaches the individual. Most advocates have worked with clients who will not talk with them one day, but welcome a respectful approach on the next.

- The P&A is allowed reasonable, unaccompanied access to facilities and community settings to investigate potential abuse or neglect. This access includes the right to

speak with any service recipient or staff member who may have knowledge of the incident being investigated.

- The P&A has the right to access the records of individuals, including investigation reports of other agencies, with consent of the individual or his guardian. Even without such consent, under certain circumstances, the P&A has a right to such records if it has probable cause to believe that an abuse or neglect incident has occurred or it has received a complaint. The P&A is the final arbiter regarding the circumstances that amount to probable cause. One circumstance that would allow a P&A to access records without consent involves individuals who do not have a legal guardian, conservator or other legal representative, or when the individual's guardian is the State or one of its political subdivisions.

- Records must be provided to the P&A within three days of a written request in most cases. However, in the case of an investigation of a death or suspicion of an immediate threat to health or safety, records must be provided within 24 hours. Under the DD Act (and the PAIR Program), access to records under these circumstances is mandated without the consent of any third party (e.g., a guardian). Under the PAIMI Act, access must be afforded without such consent in the case of a death investigation; in the case where there is an immediate threat to health or safety and the individual has a guardian, access shall be provided over the guardian's objection (so long as his or her consent was sought).

- The P&A is required to protect the confidentiality of records provided to it to the same extent required by the facility/provider.

I hope this brief summary of ADAP's access authority has been helpful. If you have any questions, please do not hesitate to contact our office.


With very best regards,

*Nancy E. Anderson*

Nancy Anderson
Attorney