# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ALABAMA

NORTHERN DIVISION

CASE NUMBER: 13-0519-CG-B

ALABAMA DISABILITIES ADVOCACY PROGRAM,

Plaintiff,

vs.

SAFETYNET YOUTHCARE, INC.,

Defendant.

---

SAFETYNET YOUTHCARE, INC.

Third-Party Plaintiff,

vs.

ALABAMA DEPARTMENT OF HUMAN RESOURCES,

Third-Party Defendant.

S T I P U L A T I O N

IT IS STIPULATED AND AGREED by and between the parties through their respective counsel, that the deposition of SHEILA HATFIELD may be taken before Leslie K. Hartsfield, at the offices of Gamble, Gamble & Calame, LLC, 807 Selma Avenue, Selma, Alabama, 36701,

DEPOSITION OF SHEILA HATFIELD

taken on the 23rd day of June, 2014.

IT IS FURTHER STIPULATED AND AGREED that it shall not be necessary for any objections to be made by counsel to any questions except as to the form or leading questions, and that counsel for the parties may make objections and assign grounds at the time of the trial, or at the time said deposition is offered in evidence, or prior thereto.

IT IS FURTHER STIPULATED AND AGREED that the notice of filing of the deposition by the Commissioner is waived.

Plaintiff's Exhibit 1, that's a letter and who is it addressed to?

A. Mr. Wheatley and Ms. Hatfield.

Q. And have you seen that letter before?

A. (Reviewed document.) I have.

Q. A copy was delivered to you, I take it?

A. Yes.

Q. What did you do with it?

A. I read it.

Q. I'm sorry?

A. I read it.

Q. Did you take any action in response to reading that letter?

A. If I recall, this has been a while, but if I recall, I received this letter right before they came on campus and asked for permission. And I called Susan Ward with DHR to ask if it was still the position for ADAP to not have access to the moderate program.

Q. So you asked the question?

A. Yes.

Q. Did she answer you?

A. She said I'll call you back. She said she would call me back.

Q. Okay.
A. And Sharon Ficquette from legal called me back and gave me her number and said to have them call her.
Q. Was that the same day?
A. It was the same day.
MS. THOMPSON: When you said them --
A. ADAP. I'm sorry. To have ADAP call Sharon Ficquette before any access was given.
Q. Was there any further explanation given to you as to why you were being instructed to do that?
A. No.
Q. What happened next?
A. I gave ADAP the phone number and told them that Sharon wanted them to call, Ms. Ficquette, and to my knowledge, the phone call was not made that day in the office. It wasn't made.
Q. And do you remember who from ADAP was present that day?
A. I do not. I don't know. Either Christy or Krista but I don't remember which one.
Q. Have you met both of them over the years?
A. I have.
Q. Have you ever accompanied them on a monitoring

visit?
A. I have walked around the campus with them, but when they meet with students, they do so in private so.
Q. In any event, after receiving that letter, when was the next time ADAP was visiting the moderate program came up?
A. I really can't tell you for sure but I know every time they would come to campus for a serious occurrence they would request.
Q. And were they ever given access to the moderate program?
A. No. Per direction from DHR, they are not.
Q. Did you ever discuss that direction with any of your supervisors at SafetyNet?
A. Yes.
Q. With whom did you discuss it?
A. Emma Cosby who used to be with us and Mr. Wheatley.
Q. And what, if anything, was discussed when the subject came up?
A. Well, Mr. Wheatley, again, I think he spoke with Sharon as well about the access and she told him not to

give access to the moderate program.

Q. Is it fair to say that neither Mr. Wheatley nor, I'm sorry, who else did you discuss it with?

A. Emma Cosby.

Q. Did either of them express any opinions that they held as to whether or not ADAP had the authority to visit the moderate program?

A. I can't speak for their opinion, but they didn't express it to me.

Q. They never said anything to you?

A. No.

Q. That's all I'm asking. At any of the attempts that were made by the ADAP staff to visit the moderate program, were you present?

A. Yes.

Q. On how many occasions, if you recall?

A. I don't recall.

Q. And what was the response each time they presented themselves?

A. To call DHR.

Q. And do not admit them to the program; is that correct?

A. Until they talked to DHR.

Q. Let me show you what's been marked as Plaintiff's Exhibit No. 2 and I'd like to ask you if you've seen that one before?
A. (Reviewed document.) I can't tell you for sure because this is addressed to Ms. Schroeder.
Q. Because it's what?
A. Addressed to Ms. Schroeder.
Q. Does it show CC at the --
A. Oh, down here.
MS. THOMPSON: His questioned was are you copied on the letter.
A. I am CC'd, yeah.
Q. So I think the pending question is: As you sit here today, do you recall whether or not you've seen that letter before?
A. I'm sure I did.
Q. And what, if anything, did you do in response to that letter?
A. I really don't recall but I probably discussed it with Mr. Wheatley.
Q. I'm sorry. Say that again.
A. I probably discussed it with Mr. Wheatley.
Q. That's what you expect to do in the normal course

of business?
A. Exactly, yes.
Q. Did you express any opinion as to whether or not ADAP's visit should be allowed?
A. No, I didn't.
Q. Did Mr. Wheatley share with you his opinion as to whether or not that ADAP should be allowed access?
A. No, he did not.
Q. Did he give any reasons as to why he reached whatever decision he did?
A. Yeah. Directed by DHR.
Q. I'm sorry?
A. We were directed by DHR.
Q. Showing you what's been marked as Plaintiff's Exhibit 3 and it has a redaction of a name, have you seen that before?
A. Yes.
Q. Have you seen it?
A. Yes.
Q. What did you do with it?
A. I prepared for their visit.
Q. I'm sorry?
A. I prepared for their visit.